```
             UNITED STATES DISTRICT COURT

                DISTRICT OF CONNECTICUT


------------------------------ x
                               :
 UNITED STATES OF AMERICA,     :
                 Plaintiff,    :    Criminal No.
                               :  3:15-CR-00038(RNC)
             vs.               :
                               :    March 11, 2015
 MATTHEW KATKE,                :
                 Defendant.    :
                               :
------------------------------ x
```

                              Federal Building
                              450 Main Street
                              Hartford, Connecticut


                    CHANGE OF PLEA HEARING


          (Transcription from Electronic Recording)


Held Before:

              THE HON. DONNA F. MARTINEZ
              United States Magistrate Judge




                  Transcription Services of
               FALZARANO COURT REPORTERS, LLC
                    4 Somerset Street
                    Simsbury, CT  06070
                     860.651.0258

A P P E A R A N C E S:

    For the Plaintiff:

        OFFICE OF THE UNITED STATES ATTORNEY
        157 Church Street - 25th Floor
        New Haven, Connecticut  06510
        203-821-3700
            BY:  JONATHAN N. FRANCIS, ESW.
                HEATHER L. CHERRY, ESQ.
                Assistant U.S. Attorneys


    For the Defendant:

        BRIAN SPEARS, LLC
        2425 Post Road - Suite 203
        Southport, Connecticut  06890
        203-292-9766
            BY:  ROBERT E. SPEARS, ESQ.

        MORVILLO, ABRAMOWITS, GRAND, LASON
        & ANELLO, PC
        565 Fifth Avenue
        New York, New York 10017
            BY:  RICHARD ALBERT, ESQ.

```
 1                    (Proceedings commenced at 4:37 p.m.)
 2                    THE CLERK:  The Honorable United States
 3          District Court is now open after recess.
 4                    THE COURT:  Good afternoon.
 5                    ALL:  Good afternoon, your Honor.
 6                    THE COURT:  All right.  This is United
 7          States v. Matthew Katke, K-A-T-K-E, 3:15 -- do
 8          you have a number, Mr. Clerk?
 9                    THE CLERK:  Oh, yes, your Honor.  It's
10          3:15-CR-38 RNC.
11                    THE COURT:  Thank you.
12                    All right.  May we have the appearances
13          of counsel, please?
14                    MR. FRANCIS:  Good afternoon, your
15          Honor.  For the Government, Johnathan Francis.
16          With me at counsel table is Assistant United
17          States Attorney Heather Cherry.
18                    THE COURT:  Good afternoon.
19                    MR. SPEARS:  Good afternoon, your
20          Honor.  Brian Spears for Matthew Katke who is
21          standing to my left.
22                    THE COURT:  Good afternoon.
23                    MR. SPEARS:  He's also represented by
24          lead counsel also present in courtroom, Rich
25          Albert and Miriam Glaser.  Mr. Albert is seated
```

```
1          at counsel table, or standing at counsel table.
2                    And if your Honor please, at this time
3          I would like to make an oral motion to have Mr.
4          Albert appear pro hac vice.  I could represent to
5          the court he satisfies all the requirements of
6          the local rule and do intend to file a written
7          motion for Ms. Glaser and Mr. Albert after
8          today's proceeding.
9                    THE COURT:  All right.  You haven't
10         filed that yet?
11                   MR. SPEARS:  Well, without the number I
12         was unable to file it.
13                   THE COURT:  I see.  All right.  You
14         have those prepared?
15                   MR. SPEARS:  I do have them prepared,
16         your Honor.
17                   THE COURT:  Do you have them with you?
18                   MR. SPEARS:  I do.
19                   THE COURT:  All right.  Hand them up.
20                   (Pause.)
21                   MR. SPEARS:  May I approach, your
22         Honor?
23                   THE COURT:  Yes, please.
24                   MR. SPEARS:  Thank you.  I'm handing up
25         my appearance, your Honor, and motion for pro hac
```

```
 1          vice admission for Mr. Albert and I will file for
 2          Attorney Glaser's following today's proceeding.
 3                    THE COURT:  Okay.
 4                    All right.  Counsel may appear.  I'm
 5          going to hand back the copies you've given me and
 6          if you would, Mr. Spears, just file those today.
 7                    MR. SPEARS:  I will.  Thank you.
 8                    THE COURT:  All right.  Thank you.
 9                    All right.  The first matter to be
10          taken up this afternoon before we proceed to the
11          guilty plea is the matter of the referral of the
12          case to me and the Defendant's consent to the
13          referral.  As I understand it the Defendant
14          intends to waive indictment and plead guilty to a
15          one count information charging him with a
16          violation of the conspiracy to commit securities
17          fraud, 18 USC 371.  Is that correct?
18                    MR. FRANCIS:  Yes, your Honor.
19                    THE COURT:  All right.
20                    Mr. Katke, there are two kinds of
21          judges in the federal system -- be seated,
22          Counsel.
23                    MR. ALBERT:  Thank you.
24                    THE COURT:  Magistrate judges and
25          district judges.  The two have different kinds of
```

1    -- you have to stand, Mr. Katke.

2           THE DEFENDANT:  Sorry.

3           THE COURT:  There are two kinds of

4    judges in the federal system, magistrate judges

5    and district judges.  The two have different

6    kinds of authority.  I'm a magistrate judge.

7    Without the referral of a district judge and a

8    defendant's consent, as a magistrate judge I

9    could not handle a proceeding such as this, a

10   change of plea in a criminal case in which a

11   felony is to be charged.  The proceeding would be

12   handled by a district judge.

13          The district judge to whom your case is

14   assigned has referred this case to me to handle

15   this proceeding and to make a recommendation to

16   him as to whether he should accept your guilty

17   plea.  The referral is only for the sake of

18   convenience.  There is no other reason.  After

19   this, your case will go back to the district

20   judge for all remaining proceedings.

21          I cannot take your guilty plea unless

22   you consent to my doing so.  You may consent to

23   have this proceeding before me or you may have

24   the proceeding before a district judge.  Have you

25   discussed with your lawyer your consent to having

```
1        this proceeding before me?
2                THE DEFENDANT:  I have, your Honor.
3                THE COURT:  Do you want to have the
4        proceeding before me or would you prefer to have
5        it before the district judge?
6                THE DEFENDANT:  Before you, your Honor.
7                THE COURT:  Does the Government
8        consent?
9                MR. ALBERT:  We do, your Honor.
10               THE COURT:  All right.
11               The Clerk will hand you if he hasn't
12       already a referral and an attached consent form.
13       If you want to have this proceeding before me you
14       may sign the consent form.  If you don't want to
15       have the proceeding before me you should not sign
16       the consent form.  If you want to discuss it
17       further with your counsel you may do that.
18               Go ahead and sign the consent form in
19       open court --
20               MR. ALBERT:  We actually signed it
21       yesterday, if that's okay.  If you want we'll
22       resign.
23               THE COURT:  All right.  Just have him
24       affix his signature to the spot right over where
25       he signed it previously.
```

1                  Defendant is signing the consent form.

2                  I find that he understands he has a

3     right to have this proceeding before a district

4     judge and has knowingly and voluntarily waived

5     that right and consented to proceed before a

6     magistrate judge.

7                  You may hand it up.

8                  MR. ALBERT:  All right, Judge.  May I

9     have the Government sign?

10               (Pause.)

11               MR. ALBERT:  May I approach, your

12     Honor?

13               THE COURT:  Yes, please.

14               Mr. Katke, before I can take your

15     guilty plea there are a number of questions that

16     I must ask you while you are under oath.  The

17     purpose of the questions is to make sure that you

18     know what you're doing, that you understand your

19     rights, that you understand the consequences of a

20     guilty plea, and that you want to plead guilty

21     because you are guilty.

22              If you don't understand any of my

23     questions please do not hesitate to say so and

24     I'll reword the question.  All right?

25              THE DEFENDANT:  Thank you.

```
 1                    THE COURT:  All right?

 2                    THE DEFENDANT:  Yes, your Honor.

 3                    THE COURT:  Place the Defendant under

 4       oath.

 5                    THE CLERK:  Yes, your Honor.

 6                    Please raise your right hand.

 7       (Whereupon, MATTHEW KATKE, the Defendant herein,

 8       was duly sworn by the Clerk.)

 9                    THE COURT:  All right.  Mr. Katke, I'm

10       going to ask you to speak up because everything

11       that's said in the courtroom is being recorded

12       and I want to make sure we pick up your voice.

13       Will you do that?

14                    THE DEFENDANT:  Yes, your Honor.

15                    THE COURT:  All right.

16                    Now, you've sworn to tell the truth.

17       If you answer any of my questions falsely you

18       will be subject to the penalties for perjury or

19       for making a false statement.  Do you understand?

20                    THE DEFENDANT:  I do, your Honor.

21                    THE COURT:  What's your full name?

22                    THE DEFENDANT:  Matthew Christopher

23       Katke.

24                    THE COURT:  Have you ever used any

25       other names?
```

```
 1                        THE DEFENDANT:  I have not.  No, your
 2        Honor.
 3                        THE COURT:  Where were you born?
 4                        THE DEFENDANT:  St. Louis, Missouri.
 5                        THE COURT:  How old are you?
 6                        THE DEFENDANT:  34.
 7                        THE COURT:  What schooling or education
 8        have you had?
 9                        THE DEFENDANT:  I graduated college.
10                        THE COURT:  Are you presently under the
11        influence of alcohol or any drugs or medicine?
12                        THE DEFENDANT:  I am not, your Honor.
13                        THE COURT:  Have you had any alcohol or
14        drugs or medicine within the past 72 hours?
15                        THE DEFENDANT:  I've had alcohol.
16                        THE COURT:  Tell me about that.
17                        THE DEFENDANT:  I had a drink with my
18        girlfriend.
19                        THE COURT:  When?
20                        THE DEFENDANT:  Last night, probably at
21        about 7:00 o'clock.
22                        THE COURT:  All right.  I gather you're
23        not feeling the effects from that?
24                        THE DEFENDANT:  You're correct, your
25        Honor.
```

```
1              THE COURT:  I'm correct you are not, is
2      that right?
3              THE DEFENDANT:  I'm not feeling
4      effects.
5              THE COURT:  Thank you.
6              Are you now or have you recently been
7      under treatment by a doctor?
8              THE DEFENDANT:  I have not.
9              THE COURT:  Are you now or have you
10     recently been under treatment by a psychiatrist,
11     psychologist or any other mental health provider?
12             THE DEFENDANT:  I have not.
13             THE COURT:  Are you now or have you
14     recently been treated for substance abuse?
15             THE DEFENDANT:  I have not.
16             THE COURT:  How do you feel today?
17     That is how is your health today?
18             THE DEFENDANT:  I feel good.
19             THE COURT:  Is your mind clear?
20             THE DEFENDANT:  It is clear.
21             THE COURT:  Are you able to understand
22     everything that's going on here?
23             THE DEFENDANT:  Yes.
24             THE COURT:  Counsel, have you had any
25     difficulty communicating with your client?
```

```
1              MR. ALBERT:  No, not at all, your
2    Honor.
3              THE COURT:  Do you have any doubts at
4    all as to his competence to proceed at this time?
5              MR. ALBERT:  No doubts, your Honor.
6              THE COURT:  Mr. Katke, are you
7    satisfied with the services of your lawyer?
8              THE DEFENDANT:  I am, your Honor.
9              THE COURT:  Have you received a copy of
10   the written charge that the Government proposes
11   to file against you in this case, the
12   information?
13             THE DEFENDANT:  I have, your Honor.
14             THE COURT:  Have you discussed it fully
15   with your lawyer?
16             THE DEFENDANT:  I have.
17             THE COURT:  The charge is contained in
18   an information which alleges a violation of 18
19   United States Code Section 371, the conspiracy to
20   commit securities fraud.  Do you understand that
21   the charge is a felony, that is a crime
22   punishable by more than one year in jail?
23             THE DEFENDANT:  I do.
24             THE COURT:  I understand that you want
25   to waive indictment and plead guilty to the
```

1        felony charge in the information.  Is that right?

2                    THE DEFENDANT:  That's correct, your

3        Honor.

4                    THE COURT:  Before you may waive

5        indictment I must make certain that you

6        understand your right to have your case presented

7        to a grand jury.  Under the Constitution of the

8        United States the Government cannot prosecute

9        someone for a felony unless the Government first

10       obtains an indictment from the federal grand

11       jury.  A grand jury is composed of citizens who

12       are called in to hear the Government's evidence.

13       The grand jury is composed of at least 16 but not

14       more than 23 people.  Before you could be

15       indicted, at least 12 of the grand jurors would

16       have to find that there is probable cause to

17       believe that a crime was committed and that you

18       committed it.

19                    I'm told that you want to waive or give

20       up the right to have your case presented to the

21       grand jury.  If you do that you are waiving your

22       right to require that the Government present its

23       case to a grand jury and you are therefore giving

24       up the possibility that the grand jury might

25       refuse to indict you.  You understand?

```
 1                 THE DEFENDANT:  I do.

 2                 THE COURT:  If you do not waive

 3       indictment the Government may present the case to

 4       the grand jury and ask the grand jury to indict

 5       you.  The grand jury might indict you or the

 6       grand jury might not indict.  But if you waive

 7       your right to indictment the felony charges

 8       against you will be brought by the United States

 9       Attorney by the filing of this information which

10       your lawyer has shown you.  The case will proceed

11       against you on the United States Attorney's

12       information just as though you had been indicted.

13                 Have you discussed waiving your right

14       to indictment by the grand jury with your lawyer?

15                 THE DEFENDANT:  I have, your Honor.

16                 THE COURT:  Do you understand your

17       right to indictment by a grand jury?

18                 THE DEFENDANT:  Yes.

19                 THE COURT:  Have any threats or

20       promises been made to induce you to waive

21       indictment?

22                 THE DEFENDANT:  No.

23                 THE COURT:  Is anyone forcing you to

24       waive indictment?

25                 THE DEFENDANT:  No, they're not.
```

1              THE COURT:  Do you want to waive your

2         right to indictment by a grand jury?

3              THE DEFENDANT:  I do.

4              THE COURT:  Counsel, is there any

5         reason your client should not waive indictment?

6              MR. ALBERT:  There's no reason, your

7         Honor.

8              THE COURT:  Government know of any

9         reason?

10             MR. FRANCIS:  None, your Honor.

11             THE COURT:  Has the Assistant United

12        States Attorney prepared the waiver form?

13             MR. FRANCIS:  We have and I believe

14        defense counsel has it.

15             THE COURT:  All right.  You may sign

16        the waiver form now in open court, Mr. Katke.

17             (Pause.)

18             THE COURT:  I find that the waiver is

19        knowingly, intelligently and voluntarily made and

20        I accept it.  Waiver form may be filed.  The

21        information may be filed.

22             MR. ALBERT:  Approach, your Honor?

23             THE COURT:  Yes, please.

24             MR. ALBERT:  Your Honor, may I hand up

25        the information?

```
 1                    THE COURT:  Yes.

 2                    (Pause.)

 3                    THE COURT:  Mr. Katke, the first and

 4          the most important thing that you must understand

 5          is that you have a right to plead not guilty and

 6          to persist in that plea even if you are guilty.

 7          If you continue in a plea of not guilty you'll be

 8          entitled to a trial by a jury with the assistance

 9          of a lawyer at the trial and at every other stage

10          of the case.  If you cannot afford a lawyer the

11          court will appoint a lawyer for you at no cost to

12          you.  You understand?

13                    THE DEFENDANT:  I do.

14                    THE COURT:  If you were to go to trial

15          you would be presumed innocent and the Government

16          would have to prove your guilt beyond a

17          reasonable doubt.  If the Government were to

18          fail, the jury would have to find you not guilty.

19          Do you understand?

20                    THE DEFENDANT:  I do.

21                    THE COURT:  In the course of the trial

22          any witnesses for the Government would have to

23          come to court and testify in your presence.  Your

24          lawyer would have the right to cross examine any

25          witnesses for the Government and to object to any
```

```
1        evidence offered by the Government.  Do you

2        understand that?

3                    THE DEFENDANT:  I do.

4                    THE COURT:  At a trial you would have

5        the right to testify if you chose to do so, but

6        you could not be required to testify.  If you

7        decided not to testify, the jury would be

8        instructed that they could not hold that against

9        you.  Do you understand that?

10                   THE DEFENDANT:  I do.

11                   THE COURT:  If the case were tried you

12       would have the right to present evidence in your

13       defense and to require the attendance of

14       witnesses to testify in your defense, but you

15       would not be required to present any evidence or

16       call any witnesses.  If you chose not to present

17       any evidence or call any witnesses, the jury

18       would be instructed that they could not hold that

19       against you.  Do you understand?

20                   THE DEFENDANT:  I do.

21                   THE COURT:  If you plead guilty, you'll

22       be giving up your right to remain silent and not

23       incriminate yourself with regard to the conduct

24       involved in the plea.  If you decide to plead

25       guilty, I'll have to ask you questions about what
```

1        you did to satisfy myself that you are guilty,

2        and you'll have to answer my questions and

3        acknowledge your guilt.  Do you understand?

4                THE DEFENDANT:  I do.

5                THE COURT:  In doing that you will be

6        waiving your privilege against self-

7        incrimination.  You know what I mean by that?

8                THE DEFENDANT:  I do.

9                THE COURT:  If you plead guilty and

10       your plea of guilty is accepted by the district

11       judge, you'll be giving up your constitutional

12       right to a jury trial and all these other rights

13       I've just discussed.  There will be no trial of

14       any kind.  You'll be found guilty on the basis of

15       your guilty plea.  You understand?

16               THE DEFENDANT:  I do.

17               THE COURT:  Are you willing to give up

18       your right to a trial and all these other rights

19       I've just discussed?

20               THE DEFENDANT:  Yes.

21               THE COURT:  Is there a written plea

22       agreement?

23               MR. FRANCIS:  There is, your Honor.

24               THE COURT:  Have you read this

25       agreement, Mr. Katke?

```
1              THE DEFENDANT:  I have.

2              THE COURT:  Do you understand it?

3              THE DEFENDANT:  I do.

4              THE COURT:  Do you want to sign it?

5              THE DEFENDANT:  Yes.

6              THE COURT:  All right.  You may be

7         seated and sign it.

8              (Pause.)

9              MR. ALBERT:  Your Honor, Mr. Katke and

10        I have signed and I'm now -- or both of them, and

11        I'm now handing it to the Government.

12             THE COURT:  Thank you.

13             (Pause.)

14             THE COURT:  All right.  Let's have the

15        Government summarize the plea agreement, please.

16             MR. FRANCIS:  Your Honor, the plea

17        agreement is a 9-page letter from my office, the

18        U.S. Attorney's Office, to Mr. Albert.

19             The first page sets forth the nature of

20        the offense, namely a conspiracy to commit

21        securities fraud under Title 15 United States

22        Code Section 78j(b) and 78f(f), all in violation

23        of Title 18 United States Code Section 371.

24             Page 1 also sets forth the conditional

25        nature of this plea under certain circumstances
```

```
 1          with respect to a related case.  That case is
 2          United States v. Jesse C. Litvak.  This is not a
 3          conditional plea under Rule 11(b), but it
 4          discusses the affect -- page 1 of the plea
 5          agreement discusses the affect if the Second
 6          Circuit or the Supreme Court were to issue a
 7          certain type of ruling in that related case, that
 8          Litvak case, the effect of which would be that
 9          the parties agree that that would be fair and
10          just reason for the Defendant to withdraw his
11          guilty plea prior to sentencing under Rule
12          11(d)(2)(b).
13               Page 1 going on to page 2 sets forth
14          the elements of the offense which I can set forth
15          -- which I can describe now, your Honor, or hold
16          until later.
17               THE COURT:  You can do that later.
18               MR. FRANCIS:  Page 2 discusses the
19          maximum penalties that Mr. Katke faces for
20          violation of Section 371, which include a 5-year
21          term of imprisonment, 3 years of supervised
22          release, which if he commits any violation of the
23          terms of the supervised release could also
24          include an additional 2 years for violation with
25          no credit for time already served.
```

1           With respect to the fine he is subject

2      to the alternative fine provision of Title 18

3      United States Code Section 3571, which means that

4      his maximum fine is the greatest of twice the

5      gross gain, twice the gross loss, or $250,000.

6           THE COURT:  Has the Government

7      calculated that amount?

8           MR. FRANCIS:  The twice the gross loss,

9      your Honor --

10          THE COURT:  Either.

11          MR. FRANCIS:  -- I believe would be the

12     largest amount.  I think it's premature for us to

13     say with certainty what we believe the loss

14     amount is but it certainly much greater than

15     $250,000 --

16          THE COURT:  All right.

17          MR. FRANCIS:  -- in its own right, and

18     then once doubled it would be we believe millions

19     of dollars.

20          THE COURT:  All right.

21          MR. FRANCIS:  Mr. Katke is also subject

22     to a special assessment of $100.

23          Continuing on the bottom of page 2 this

24     is a mandatory restitution case.  The terms of

25     restitution that would be required go onto page 3

```
 1          and also discussed in the restitution rider which
 2          is page 9 of the plea agreement.
 3                    Page 3 sets forth or begins to set
 4          forth the guidelines.  Mr. Katke agrees that the
 5          guidelines or he understands that the guidelines
 6          are advisory and are simply one factor that the
 7          court must consider along with all the other
 8          factors under 3553(a).
 9                    Mr. Katke at this time and the
10          Government agree that the Government will
11          recommend a 2 point reduction for acceptance of
12          responsibility under Chapter 3 of the United
13          States Sentencing Guidelines, and it describes
14          what is necessary for Mr. Katke in order to keep
15          those that 2 point reduction.  And based on the
16          information currently available to the
17          Government, we believe that Mr. Katke would be
18          eligible for an additional 1 point reduction.
19          The Government would move for that additional
20          third point reduction for early acceptance of
21          responsibility.
22                    Page 4 sets forth -- discusses the fact
23          that there is no guideline stipulation between
24          the parties, no substantive guideline stipulation
25          between the parties and they reserve their rights
```

1          to make arguments to the sentencing court.

2                    With respect to Mr. Katke's right to

3          appeal or collaterally attack his conviction or

4          sentence, Mr. Katke waives his rights with

5          several exceptions, the first being Mr. Katke

6          does not waive his right to assert ineffective

7          assistance of counsel, inappropriate forum.

8                    Secondly, Mr. Katke reserves his right

9          to bring an appeal or collaterally attack his

10         conviction in the event that the related case I

11         mentioned earlier, that Litvak case, is decided

12         in a specific way that would be grounds for an

13         appeal or collateral attack.

14                   And the third exception is Mr. Katke

15         reserves the right to appeal his sentence, and

16         the Government likewise reserves its right to

17         oppose any such appeal.

18                   THE COURT:  Is there a specific issue

19         in Litvak that the parties are focused on?

20                   MR. FRANCIS:  There is, your Honor.

21         That appeal, that Litvak appeal raises a number

22         of issues that are specific to the case, that are

23         factually specific to the case.  However, it also

24         raises potentially some issues that would be as a

25         matter of law would apply to all in the Second

1    Circuit or potentially if the Supreme Court were

2    to cite it, all federal cases regarding what is

3    the meaning of the securities laws.  Thus what

4    the parties have attempted to do is craft

5    language that makes it clear that if a final

6    judgment in <u>Litvak</u> determines that Mr. Katke's

7    conduct as a matter of law could not have been a

8    crime, we don't want him pleading guilty to

9    something that's not a crime.

10              THE COURT:  Um-hum.

11              MR. FRANCIS:  And so that's why we've

12   mentioned it in two places.  The first provides a

13   remedy for Mr. Katke post-plea pre-sentence, and

14   then the second place where it appears is on page

15   4 and 5 and it's an exception to this right to

16   appeal or collaterally attack, which sort of

17   presupposes that we're sort of chronologically

18   further along in the case and he's already been

19   sentenced and thus he has -- he's within an

20   appeal time frame.

21              THE COURT:  Is the issue defined any

22   more precisely than what constitutes securities

23   fraud?

24              MR. FRANCIS:  Sure.  As the parties --

25   the language the parties negotiated to describe

```
 1        what they're trying to accomplish here appears

 2        twice in the agreement, on page 1 and on page 4,

 3        and I can read that into the record, your Honor,

 4        if you'd like?

 5                  THE COURT:  Well, I've read that.  Page

 6        1 and 4 of the plea agreement?

 7                  MR. FRANCIS:  That's right.

 8                  THE COURT:  All right.  So page 1 says

 9        legal issues concerning the crime of securities

10        fraud.

11                  MR. FRANCIS:  Okay.  Yes, yes, it does,

12        your Honor, but more specifically the part that I

13        think -- I'm thinking of is legal issues

14        concerning the crime of securities fraud in such

15        a way as to be applicable to the crime of which

16        the Defendant is pleading guilty.  And then the

17        next sentence says if a final decision holds that

18        as a matter of law the conduct of the defendant

19        in the Litvak case did not violate the securities

20        fraud statute, then the parties agree that the

21        final decision in that case either constitutes a

22        fair and just reason to withdraw his plea or

23        constitutes an exception to his appellate and

24        collateral attack waiver.

25                  THE COURT:  All right.  So for any
```

```
 1          reason if the Second Circuit or the Supreme Court
 2          doesn't uphold the conviction of Litvak for any
 3          reason, any issue having to do with securities
 4          fraud as opposed to -- I don't know what else is
 5          at issue, some sort of general trial issue,
 6          that's what the parties are focused on?
 7                    MR. FRANCIS:  No, your Honor.
 8                    THE COURT:  All right.
 9                    MR. FRANCIS:  With all due respect, let
10          me try again to explain what we're trying to do
11          here.  So there are -- so in Litvak, in the
12          Litvak case one of the arguments on appeal, for
13          instance, is sufficiency of the evidence.
14                    THE COURT:  Um-hum.
15                    MR. FRANCIS:  Now, that's an argument
16          that is specific to that particular trial and
17          would have nothing to do with Mr. Katke's
18          liability under the securities fraud statute.
19          But there is also this argument or potentially
20          more than one argument that Mr. Litvak has raised
21          about what is the meaning of certain terms,
22          certain elements of securities fraud.  If the
23          Second Circuit or the Supreme Court were deciding
24          in Mr. Litvak's favor in such a way that making
25          misrepresentations of fact to people in fixed
```

```
 1            income securities transactions regarding price or
 2            that have an affect on price is not either
 3            material or doesn't constitute a violation of the
 4            securities laws, well then Mr. Litvak could not
 5            -- did not commit a crime, the crime of
 6            securities fraud, and thus Mr. Katke could not be
 7            guilty of committing -- he could not plead guilty
 8            to committing the crime of securities fraud.
 9                      THE COURT:  So it's the issue of
10            materiality; is that what you're telling me?
11                      MR. FRANCIS:  From the Government's
12            perspective the only way this issue comes up in
13            Litvak is materiality.
14                      THE COURT:  Yeah.
15                      MR. FRANCIS:  I believe in fairness to
16            the defense they may have a broader view of what
17            Mr. Litvak's arguments are, but the way that the
18            parties have sort of fashioned this to kind of
19            get at both of their approaches is if a decision
20            redefines securities fraud as a matter of law in
21            such a way that Mr. Katke's conduct is not a
22            violation of the law, well then clearly he
23            shouldn't be pleading guilty to it because it
24            wasn't a crime.
25                      MR. ALBERT:  If I may, your Honor.
```

```
 1                    THE COURT:  Yes, please.
 2                    MR. ALBERT:  This is obviously somewhat
 3         unusual and it has been the subject of a great
 4         deal of discussion between myself and Mr. Francis
 5         and his office, and I think the language that's
 6         set forth in the agreement I think effectively
 7         captures what we're trying to do, is certainly
 8         materiality is one of the prime issues that's on
 9         the appeal in Litvak and it's certainly one of
10         the main ones that we're both thinking that the
11         court, Second Circuit or the Supreme Court could
12         say the conduct -- and I think it's important to
13         say the following:  The conduct here is
14         effectively the same as the conduct in the Litvak
15         case.  It's for all the reasons, for all the
16         issues that we're talking about, it's effectively
17         the same.
18                    THE COURT:  Um-hum.
19                    MR. ALBERT:  The Second Circuit or the
20         Supreme Court in Litvak would say that conduct is
21         just not material.  And if they did say that, and
22         that's one of the arguments that's going up on
23         appeal now, they said that under the language of
24         this he'd be entitled to vacate his plea,
25         withdraw his plea or to vacate and collaterally
```

```
1        attack it.  I think that's exactly what Mr.
2        Francis said.
3              There's a little bit more, it gets a
4        little bit complicated, I think it's captured by
5        the language of the agreement, but there is
6        another angle of the argument that's being made
7        on appeal which essentially is saying that this
8        conduct does not constitute intent to defraud
9        sufficiently to make out as securities fraud.
10             The Government has a view that that
11       argument is incorrect legally and they think that
12       factually it's incorrect also.  But the bottom
13       line is it could be worded by the Second Circuit
14       or the Supreme Court, is it in an attempt to
15       defraud rather than the materiality, it's
16       possible.
17             The bottom line is if the Second
18       Circuit or the Supreme Court said that conduct in
19       Litvak as a matter of law didn't violate the
20       securities laws, we've agreed that he gets his
21       plea back.  And I frankly think, your Honor, if
22       it's of some use to the Court, and Mr. Francis
23       will correct me on this last point if he
24       disagrees, as a matter of law if that actually
25       happened, even if we didn't write that into the
```

1    agreement, I think he would be entitled to

2    withdraw his plea and the Government would be

3    very hard pressed to oppose such a thing because

4    when the Court says that conduct doesn't

5    constitute that crime we can't uphold a guilty

6    plea.

7        So it is -- we have endeavored to

8    capture that and make explicit something I think

9    is implicit in the law but focused carefully on

10   the language and certainly has been the subject

11   of a great deal of conversation, and that Mr.

12   Katke is fully aware of.

13       THE COURT:  Would I be understanding

14   correctly if I said that the way I understand you

15   is that the issue is, at least in the

16   Government's view, more likely cast in terms of

17   materiality and the Defendant is saying, well,

18   yes, materiality, but the Court could rule in

19   such a way as to call it intent, you know,

20   redefine the issue or define the issue.

21       MR. ALBERT:  I think your Honor has

22   captured the essence of it, but yes, I think

23   that's right.

24       THE COURT:  Okay.

25       MR. FRANCIS:  I agree with that, your

1    Honor.

2                    THE COURT:  All right.  Okay.  Thank

3    you.

4                    So I interrupted you when you were

5    telling me about the appeal waiver.  Let me have

6    you go back to that.

7                    MR. FRANCIS:  Right.  So there is an

8    appellate waiver although there are several

9    exceptions.  Those exceptions are defined and

10   agreed to by the parties and understood.

11                   Mr. Katke also -- I'm not on page 5 --

12   recognizes that the Government has reserved its

13   right to inform the Court about information known

14   to the Government with respect to sentencing and

15   provide information to the Probation Office.

16                   Mr. Katke has also waived the trial

17   rights already discussed by your Honor with him.

18   That takes us to page 6 where Mr. Katke agrees

19   that the statute of limitations is tolled as of

20   this date should his conviction later be vacated.

21                   Mr. Katke on page 6 recognizes and

22   acknowledges that he's entering a guilty plea

23   voluntarily because he believes he's guilty.  He

24   acknowledges the nature of his offense and his

25   recognition or his knowledge of the maximum

1          penalties under the law that he's subject to.

2                    Mr. Katke understands the collateral

3          consequences of a conviction for a felony and as

4          a result of the plea today the Government is

5          agreeing that his plea satisfies his criminal

6          liability in the District of Connecticut that he

7          may have as a result of the conduct underlying

8          Count 1 in the information, single count

9          information.

10                    And there are no other promises except

11         otherwise as reflected in writing, which if your

12         Honor thinks is the appropriate time would bring

13         me to the cooperation agreement, which is part of

14         the plea agreement and incorporated into it.

15                    THE COURT:  All right.  You want to

16         take that up in open court from where you are I

17         gather from your remarks?

18                    MR. FRANCIS:  We do, your Honor.

19                    THE COURT:  All right.  Tell me about

20         the cooperation agreement.

21                    MR. FRANCIS:  The cooperation agreement

22         is in the form of a 4-page letter from the U.S.

23         Attorney's Office to Mr. Albert, and page 1 sets

24         forth the scope of Mr. Katke's cooperation with

25         the Government.  In particular he agrees to be

```
 1            debriefed and disclose fully and truthfully all
 2            information concerning his knowledge and
 3            participation in criminal activities by himself
 4            or others whether or not related to the charges
 5            to which he is pleading guilty.
 6                    Mr. Katke agrees to testify truthfully
 7            before a grand jury or in any trial or other
 8            proceeding as required by the Government, and Mr.
 9            Katke agrees to cooperate with federal agents,
10            which in this case are specified to be agents of
11            the Special Inspector General for the Troubled
12            Asset Relief Program, agents of the Federal
13            Bureau of Investigation, or other agents, other
14            law enforcement officers and agents as required
15            by the Government.
16                    Page 2 of the cooperation agreement,
17            Mr. Katke acknowledges that the Government will
18            inform the sentencing court of his cooperation,
19            although the Government will not make a specific
20            recommendation with respect to his sentence, it
21            will notify the court of the scope of his
22            cooperation and the affect thereof.  And Mr.
23            Katke recognizes that the Court -- it's up to the
24            Court to determine his sentence.
25                    Further, if Mr. Katke provides
```

1    substantial assistance to the Government, the

2    Government agrees that it will make a motion

3    under Chapter 5 of the United States Sentencing

4    Guidelines asking the Court to depart below or

5    impose a variance below the guideline range that

6    is applicable.  Mr. Katke recognizes in this

7    agreement that the Court is not obligated to

8    grant that motion and that the Government does

9    not make any promise or representation as to what

10   his sentence will in fact be as imposed by the

11   sentencing court.

12           The Government agrees that it will not,

13   subject to the breach provisions of this

14   agreement, the Government will not use

15   information disclosed by Mr. Katke in any

16   subsequent unrelated criminal prosecution.

17           Mr. Katke understands and recognizes in

18   this agreement that nothing herein or anywhere

19   really protects him from prosecution for perjury,

20   false statement or obstruction of justice, or any

21   other offense committed by him after the date of

22   this agreement, and that any information he

23   provides may be used against him in any such

24   prosecution.

25           If the Government determines that the

```
 1          Defendant has intentionally given false,

 2          misleading or incomplete information or

 3          testimony, has committed or attempted to commit

 4          any further crimes, has failed to cooperate fully

 5          or has otherwise violated any provision of this

 6          cooperation agreement, then the Government may

 7          deem the agreement and the cooperation agreement

 8          and/or the plea agreement null and void.

 9          However, if the Government voids only the

10          cooperation agreement, then Mr. Katke will not be

11          permitted to withdraw his plea of guilty or his

12          plea agreement and he acknowledges that

13          explicitly in the cooperation agreement.

14               If the cooperation agreement is voided

15          Mr. Katke acknowledges that he will be subject to

16          prosecution for perjury, false statements,

17          obstruction of justice, and the Government may

18          premise such prosecution on information provided

19          by him during his cooperation, and that any

20          statements provided by him will be admissible.

21               Mr. Katke waives any statute of

22          limitation defense in this agreement, and

23          acknowledges that there are no other promises

24          made by the Government other than what's

25          explicitly written in the cooperation or plea
```

1          agreement, and together the cooperation and plea

2          agreement constitute the entirety of his plea

3          agreement.

4                    THE COURT:  Thank you.

5                    MR. FRANCIS:  Thank you.

6                    THE COURT:  Mr. Katke, will you stand?

7                    Mr. Katke, I'm going to ask you

8          questions to make sure that you understand your

9          agreement with the Government.  Before I focus on

10         your entire agreement I'm going to focus on one

11         provision in particular.  That's the provision at

12         the bottom of page 4, in the section entitled,

13         Right to Appeal or Collaterally Attack Conviction

14         and Sentence.  You see that?

15                   THE DEFENDANT:  I do.

16                   THE COURT:  You've read that?

17                   THE DEFENDANT:  I have read that.

18                   THE COURT:  Been over it with your

19         lawyer?

20                   THE DEFENDANT:  I have.

21                   THE COURT:  So the rules require me to

22         address you about that provision specifically, so

23         I'm going to do that now.

24                   Under certain circumstances a defendant

25         might have a right to appeal his case to a higher

```
 1           court.  You understand that?

 2                    THE DEFENDANT:  I do, your Honor.

 3                    THE COURT:  A defendant might also have

 4           a right to do what's called collaterally attack

 5           his conviction or sentence.  And that means to

 6           file another lawsuit, usually called a habeas, in

 7           which the defendant makes an argument that there

 8           is something legally wrong with the conviction or

 9           sentence and asks the court to set it aside.  Do

10           you understand that?

11                    THE DEFENDANT:  I do.

12                    THE COURT:  So you might ordinarily

13           have the right to challenge your conviction or

14           sentence in that way, but you've agreed to limit

15           those rights.  You understand?

16                    THE DEFENDANT:  I do understand.

17                    THE COURT:  So first there's nothing

18           that can foreclose you from making a claim later

19           on of ineffective assistance of counsel.  Do you

20           understand all that?

21                    THE DEFENDANT:  I do.

22                    THE COURT:  Now you've heard this

23           discussion we've had about the issues that are

24           presently before the Court of Appeals in United

25           States v. Litvak having to do with the -- having
```

1           to do with legal issues concerning securities

2           fraud and what constitutes a securities fraud.

3           So the parties have agreed that you will not give

4           up your rights to appeal or collaterally attack

5           your conviction or sentence if a final decision

6           in the Litvak case holds that as a matter of law

7           your -- the conduct of Litvak in that case did

8           not violate 15 United States Code Section 78j(b)

9           or Section 78f(f), then your waiver of appellate

10          and collateral review rights will not apply.  So

11          that issue is carved out for you.  Do you

12          understand all that?

13                    THE DEFENDANT:  I do.

14                    THE COURT:  In addition, the parties

15          reserve their respective rights to appeal and to

16          oppose each other's appeal of the sentence.  So

17          you haven't given up your rights to appeal the

18          sentence.

19                    THE DEFENDANT:  Correct.

20                    THE COURT:  Do you understand?

21                    THE DEFENDANT:  I do.

22                    THE COURT:  All right.  Now I'm going

23          to ask you questions about the entire plea

24          agreement, that is these agreements that have

25          been summarized by the United States Attorney.

```
 1                    Did the two agreements that have been
 2          summarized by the Assistant United States
 3          Attorney fully and accurately reflect your entire
 4          understanding of the agreement that you've
 5          entered into with the United States Government?
 6                    THE DEFENDANT:  They do.
 7                    THE COURT:  Other than the promises
 8          contained in the written agreement, has anyone
 9          made any promises to you that have caused you to
10          want to plead guilty?
11                    THE DEFENDANT:  They have not.
12                    THE COURT:  You've read both of the
13          agreements?
14                    THE DEFENDANT:  I have.
15                    THE COURT:  You've been over them with
16          your lawyer?
17                    THE DEFENDANT:  Yes.
18                    THE COURT:  Now, has anyone made any
19          promises to you as to what your sentence will be?
20                    THE DEFENDANT:  They have not.
21                    THE COURT:  Has anyone threatened you
22          in any way in an attempt to get you to plead
23          guilty?
24                    THE DEFENDANT:  They have not.
25                    THE COURT:  Has anybody attempted to
```

```
 1          coerce you or intimidate you into pleading

 2          guilty?

 3                    THE DEFENDANT:  No, your Honor.

 4                    THE COURT:  Is anybody forcing you to

 5          plead guilty?

 6                    THE DEFENDANT:  No.

 7                    THE COURT:  Do you want to plead guilty

 8          because you choose to plead guilty voluntarily of

 9          your own free will?

10                    THE DEFENDANT:  Yes, your Honor.

11                    THE COURT:  All right.  The signed plea

12          agreement may be filed.  Do you want the

13          cooperation agreement filed as well?

14                    MR. FRANCIS:  Yes, your Honor.  They

15          can be filed together.

16                    THE COURT:  All right.  It may be

17          filed.

18                    MR. FRANCIS:  May I approach?

19                    THE COURT:  Yes, please.

20                    (Pause.)

21                    THE COURT:  Now I'm going to address

22          you about the sentence that can be imposed if you

23          plead guilty.

24                    First, if you plead guilty, the court

25          can send you to jail for as long as 5 years.  You
```

1    understand?

2         THE DEFENDANT:  I do.

3         THE COURT:  In addition, the Court may

4    imposes a term of supervised release if not more

5    than 3 years to begin at the end of any jail

6    term.  If you're placed on supervised release,

7    which is a form of court supervision, you will be

8    required to satisfy certain conditions while on

9    supervised release, including that you not commit

10   any crime.

11        If you were to violate any condition of

12   your supervised release, you could be required to

13   serve a further term of imprisonment of up to two

14   years with no credit for time already spent on

15   supervised release.  You understand that?

16        THE DEFENDANT:  I understand.

17        THE COURT:  In addition, you can be

18   fined as much as $250,000 under the statute, but

19   there is also what's called an alternative fine

20   provision that applies.  Under the alternative

21   fine provision the maximum fine that may be

22   imposed upon you is the greatest of the

23   following:  Twice the gross gain to you resulting

24   from the offense, twice the gross loss to the

25   victims resulting from the offense, or $250,000,

```
 1           again, whichever is greatest.  Understand?
 2                   THE DEFENDANT:  I understand.
 3                   THE COURT:  You also can be required to
 4           pay the cost to the United States Government of
 5           any imprisonment, probation or period of
 6           supervised release.
 7                       If a sentence of imprisonment is
 8           imposed, the rate is $2,036.92 a month.  If a
 9           sentence of probation or supervised release is
10           imposed the rate is $294.60 a month.  If a fine
11           of more than $2,500 is imposed, you can be
12           required to pay interest on any fine amount that
13           is not paid within 15 days of the date you're
14           sentenced.  You'll be required to pay a mandatory
15           special assessment of $100.  You'll be required
16           to make restitution.
17                   Does forfeiture apply, Counsel?
18                   MR. FRANCIS:  It does not, your Honor.
19                   THE COURT:  Is my statement of the
20           penalties correct?
21                   MR. FRANCIS:  I believe so, yes, your
22           Honor.
23                   MR. ALBERT:  I think so, your Honor.
24                   THE COURT:  All right.  You think so or
25           it is?
```

1            MR. ALBERT:  Yes.

2            THE COURT:  All right.

3            And Mr. Katke, do you understand these

4    possible consequences of your plea of guilty?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  Now I'm going to talk to

7    you about the sentencing guidelines.

8             The United States Sentencing

9    Commission has issued guidelines that apply to

10   your case.  Have you and your lawyer talked about

11   how the sentencing guidelines might apply to you?

12           THE DEFENDANT:  We have, your Honor.

13           THE COURT:  The sentencing guidelines

14   are advisory guidelines under which the Court

15   calculates a recommended sentence using the

16   different facts of each case.  The calculation

17   results in a guideline range of possible

18   sentences.  The sentencing judge must consider

19   the guideline range as a recommendation that he

20   sentence you within that range.

21           The sentencing judge also must consider

22   any possible grounds for departure from the

23   guidelines.  He's permitted to tailor your

24   sentence in light of certain statutory sentencing

25   factors, that is statutory concerns outside the

1       guidelines, but he is required to consider the

2       sentencing guidelines in deciding the sentence

3       that should be imposed.

4               The guidelines are not mandatory; the

5       guidelines are advisory.

6               The guideline range for your case will

7       be determined after a presentence report is

8       prepared by the U.S. Probation Office, and you,

9       your lawyer, and the U.S. Attorney's Office have

10      had an opportunity to comment on the presentence

11      report.  Until then, no one can be sure what the

12      guideline range will be.  Do you understand?

13              THE DEFENDANT:  I do.

14              THE COURT:  Now, your lawyer might have

15      advised you of his opinion as to what the

16      guideline range probably will be, but his

17      prediction might be wrong.  Do you understand?

18              THE DEFENDANT:  I understand.

19              THE COURT:  If it turns out that the

20      guideline range is higher than you anticipated,

21      the mere fact that you expected to be sentenced

22      under a lower guideline range will not be a basis

23      for withdrawing your guilty plea or overturning

24      your sentence.  Do you understand all that?

25              THE DEFENDANT:  I do.

```
 1              THE COURT:  Now once again I'm told you
 2     want to plead guilty to the one count information
 3     which charges you a violation of 18 United States
 4     Code Section 371, the conspiracy to commit
 5     securities fraud.  To prove that you are guilty
 6     of this charge the Government would have to prove
 7     certain things beyond a reasonable doubt, and we
 8     call those things elements of the offense.
 9              I'm going to ask the prosecutor to list
10     the elements.
11              MR. FRANCIS:  Your Honor, there are
12     three elements would have to prove beyond a
13     reasonable doubt to establish Mr. Katke's guilt
14     of the crime charged.  First, that two or more
15     persons entered into an agreement to commit
16     securities fraud in violation of Title 15 United
17     States Code Section 78j(b) and Section 78f(f).
18              Secondly, that the Defendant knowingly
19     participated in the conspiracy with the specific
20     intent to commit the offense that was the object
21     of the conspiracy.
22              And third, that during the course of
23     the conspiracy one of the members of the
24     conspiracy committed an overt act in furtherance
25     of the objectives of the conspiracy.
```

```
1              THE COURT:  What do 15 USC 78j(b) and
2       78f(f) prohibit?
3              MR. FRANCIS:  Those are the security
4       fraud statutes that prohibit quite a lot of
5       things, but generally it falls -- I think they
6       could all be summarized as falling under the
7       category of fraud in connection with the purchase
8       or sale of a security as defined by the law.
9              THE COURT:  All right.
10             Mr. Katke, I'm about to ask you what
11      you did that shows you're guilty of the offense
12      to which you're offering to plead guilty.  Before
13      I do that I want to give you an opportunity to
14      speak with your lawyer if you want or need to
15      speak with him.  If you have any questions or
16      concerns that you want to discuss with your
17      lawyer before we proceed, take whatever time you
18      need and talk with him now.
19             THE DEFENDANT:  I'm okay, your Honor.
20             THE COURT:  All right.  Tell me in your
21      own words what you did that shows you're guilty
22      of this offense.
23             THE DEFENDANT:  From approximately 2008
24      to 2013 I worked at RBS Securities as a trader,
25      primarily trading collateralized loan obligation
```

1  bonds known as CLO bonds.  My position involved

2  trading CLO bonds with customers who were

3  individuals acting on behalf of other

4  institutions.

5          When I worked at RBS I agreed with

6  others at RBS to misrepresent information to

7  customers regarding the price at which RBS had

8  obtained or would obtain or would resell the

9  bonds we were trading with those customers, and

10 regarding whether or not those bonds were in RBS'

11 inventory.

12         Over time I took various actions in

13 furtherance of this agreement.  For instance, in

14 furtherance of this agreement, on January 13 of

15 2012 in the course of negotiations that resulted

16 in RBS buying a certain CLO bond from a selling

17 customer at a price of 77.25, I falsely told the

18 selling customer that RGS was reselling that CLO

19 bond at a price of 77 and a half, when in fact I

20 knew that RBS was reselling that bond to a buying

21 customer at a price of 83.

22         Also, on that same day in the course of

23 negotiations with a buying customer, I made false

24 statements to create the impression that RBS was

25 acquiring that CLO bond at a price higher than 77

1    and a quarter, when in fact I knew that RBS was

2    acquiring that CLO bond at a price of 77 and a

3    quarter.

4              I knew that these statements were false

5    when I made them.  By making these false

6    statements I intended to deceive customers and to

7    help RBS in my price negotiations with those

8    customers.  I made some of these false statements

9    while I was located in Stamford, Connecticut and

10   by means of a Bloomberg chat service which I

11   understand is transmitted over interstate wires.

12             THE COURT:  All right.  I'm going to

13   ask the Government now to summarize their

14   evidenced that shows you're guilty.  I want you

15   to listen very carefully because when the

16   prosecutor finishes I'm going to ask you if you

17   agree or disagree with the things he tells me.

18   All right?  You may sit down.

19             Go ahead.

20             MR. FRANCIS:  If put to its proof at

21   trial the Government would prove beyond a

22   reasonable doubt all the elements of the charged

23   crime; that is a conspiracy to commit an offense

24   against the United States, namely securities

25   fraud, under Title 15 United States Code Section

1       78j(b) and Section 78f(f), all in violation of

2       Title 18 United States Code Section 371.

3               The Government would make its case

4       using documentary evidence and testimony from

5       civilian and law enforcement witnesses.  The

6       documentary evidence would include

7       contemporaneous interstate electronic messages

8       among members of the conspiracy including Mr.

9       Katke.  It would also include interstate

10      electronic messages between conspirators and

11      victims in which members of the conspiracy,

12      including Mr. Katke, made fraudulent

13      misrepresentations or omissions.  The documentary

14      evidence would also include business records from

15      the victims and RBS Securities, Mr. Katke's

16      former employer.

17              The Government's witnesses would

18      include victims, RBS employees, and federal

19      agents.

20              This evidence would prove the

21      following:  Mr. Katke previously was a managing

22      director at RBS, which is a registered broker

23      dealer with offices in Stamford, Connecticut

24      where Mr. Katke worked.  Mr. Katke worked in RBS'

25      asset backed products group which was responsible

1        for trading fixed income securities such as

2        residential mortgage backed securities,

3        commercial mortgage backed securities, and

4        collateralized loan obligations, known as CLOs.

5               Mr. Katke specialized in trading CLOs

6        which are securities under the meaning of the

7        securities laws.  In his role at RBS beginning in

8        2008 and continuing until -- pardon me, beginning

9        in 2008 Mr. Katke was a party to an agreement

10       with others to perpetrate a fraudulent scheme

11       against RBS customers buying or selling CLOs.

12       Such a scheme as well as the acts or statements

13       in furtherance of it are prohibited under the

14       securities laws and SEC regulations, specifically

15       Title 17 Code of Federal Regulations Section

16       240.10(b)-5, commonly known as Rule 10(b)-5.

17               The purpose of the conspiracy was to

18       benefit RBS and thus the conspirators, including

19       by increasing RBS profits on CLO trades.  In

20       furtherance of this conspiracy Mr. Katke and co-

21       conspirators committed numerous overt acts

22       including in the District of Connecticut.  For

23       instance, members of the conspiracy, which

24       included licensed securities brokers such as Mr.

25       Katke, acting with the intent to deceive, made

1        fraudulent misrepresentations of facts to

2        victims.  As a broker dealer, RBS was the

3        middleman between CLO buyers and sellers, and

4        thus its employees had information that its

5        customers did not.  The conspirators took

6        advantage of this superior information by

7        misrepresenting facts relevant to pricing and

8        price negotiations which was important to

9        victims.

10               For instance, when RBS was the

11       middleman between the CLO seller and a buyer,

12       conspirators would lie to the buyer about the

13       seller's asking price or vice versa.

14               Similarly in other trades where RBS

15       owned the bond being sold, conspirators falsely

16       told the buyer that RBS was negotiating with a

17       fictitious seller, which among other things

18       allowed RBS to charge an unearned matchmaker or

19       finder's fee.

20               One purpose and effect of the

21       conspirators' misrepresentations was to cause

22       buyers to pay higher prices and sellers to accept

23       lower prices than they would have otherwise.

24       This increased the difference between the price

25       paid by the buyer and the price accepted by the

1      seller, which was known in the industry as the

2      spread.  Rather than keeping only the agreed upon

3      amount of compensation for RBS, the conspirators

4      on these CLO trades secretly kept the entire

5      increased amount of spread for RBS.  This made

6      CLO trades more profitable for RBS but less

7      profitable for its victims.

8               Based on the Government's present

9      information, the evidence at trial would show

10     that the conspiracy resulted in dozens of

11     fraudulent trades with at least 20 victims, the

12     economic effect of which was to increase RBS'

13     profits by millions of dollars at the victims'

14     expense.

15              THE COURT:  Mr. Katke, did you hear

16     everything that the prosecutor just told me?

17              THE DEFENDANT:  I did, your Honor.

18              THE COURT:  Do you agree or disagree

19     with the things he said?

20              MR. ALBERT:  May I have a moment, your

21     Honor?

22              THE COURT:  Yes.

23              (Pause.)

24              MR. ALBERT:  Your Honor, what Mr. Katke

25     would respond to that is that he has admitted the

```
1        elements of the offense by his allocution, and

2        there may be one or two slightly -- things that

3        we would say slightly differently from what Mr.

4        Francis just recited.

5                    THE COURT:  Um-hum.

6                    MR. ALBERT:  We're not -- we can't

7        adopt every word and phrase that he just

8        described, but Mr. Katke certainly has allocuted

9        sufficiently to the elements of the conspiracy to

10       commit securities fraud.

11                   THE COURT:  So what does the Defendant

12       take exception to?

13                   MR. ALBERT:  Your Honor, I don't -- I

14       would ask the Court not to have to go through

15       every word that Mr. Francis -- frankly, I've

16       never heard in those words what Mr. Francis just

17       said, so I would ask the Court not to have to go

18       through every word of what he just said to see

19       the things -- to state certain things that we

20       might state slightly differently.

21                   Mr. Katke is here today to plead guilty

22       to conspiracy to commit securities fraud.  He has

23       allocuted to the elements.  So, you know, I think

24       that should be sufficient.

25                   THE COURT:  Um-hum.
```

```
 1                    MR. ALBERT:  If there's some specific
 2       question that the Court has, other than that we'd
 3       be happy to address it.  I think that's just an
 4       easier way to proceed.
 5                    THE COURT:  Government?
 6                    MR. FRANCIS:  Could I suggest -- could
 7       I have a moment to discuss with defense counsel?
 8                    THE COURT:  Yes.
 9                    MR. FRANCIS:  If there's a specific
10       issue I'd like to know what it is.
11                    THE COURT:  Yep.  You may.
12                    (Counsel conferring.)
13                    MR. FRANCIS:  Your Honor, may I have
14       one more moment?
15                    THE COURT:  Yes.
16                    (Pause.)
17                    THE COURT:  Counsel want me to recess?
18                    MR. FRANCIS:  No, your Honor.
19                    THE COURT:  All right.
20                    MR. FRANCIS:  Thank you very much for
21       your indulgence.
22                    We believe there's a sufficient factual
23       basis for the Court to accept Mr. Katke's plea of
24       guilty based on his statements and the evidence
25       that the Government just described without asking
```

1      him to confirm what actual witnesses would say or

2      documents would show that frankly I don't know

3      that Mr. Albert has had access to those pieces of

4      information.

5                  THE COURT:  All right.  So is that the

6      issue, that the Defendant is not in position to

7      know precisely what witnesses would testify to?

8                  MR. ALBERT:  Certainly on issue, your

9      Honor, yes.

10                 THE COURT:  Okay.  Help me out here.

11     What else is there?

12                 MR. ALBERT:  Your Honor, certain of the

13     statements that Mr. Francis made were

14     characterizations.

15                 THE COURT:  Um-hum.

16                 MR. ALBERT:  We would not necessarily

17     adopt every single characterization.

18                 THE COURT:  Um-hum.  All right.  So I

19     want to make sure I understand.  The Defendant

20     admits that he gave false information to his

21     customers.  I'm hearing that, right?

22                 MR. ALBERT:  Yes.

23                 THE COURT:  Sometimes he told them that

24     the buy price was different, sometimes he told

25     them that the sell price was different depending

```
 1            on whether they were buying or selling.
 2                      MR. ALBERT:  Just to be clear, if he's
 3            selling to Customer A, sometimes he misstated to
 4            Customer A what he had bought that bond for.
 5                      THE COURT:  Yes.
 6                      MR. ALBERT:  And in the inverse it
 7            would be the others.
 8                      THE COURT:  All right.  And the things
 9            he was giving false information about affected
10            the ultimate price?
11                      MR. ALBERT:  They were made with intent
12            to deceive.
13                      THE COURT:  Yes.
14                      MR. ALBERT:  And they were said with
15            intent to assist RBS in the price negotiation.
16                      THE COURT:  So ultimately to assist in
17            making a successful sale?
18                      MR. ALBERT:  Yes.
19                      THE COURT:  And that was to the benefit
20            of RBS and therefore the Defendant and other
21            people in his shoes?
22                      MR. ALBERT:  To the most direct benefit
23            of RBS but, you know, things that help RBS and
24            his trading ultimately would help him.
25                      THE COURT:  And to the detriment of the
```

```
 1            buyers.
 2                 MR. ALBERT:  It was made to -- these
 3            were intended to help -- statements were intended
 4            to help RBS achieve the price point that it
 5            wanted in those negotiations.
 6                 THE COURT:  Um-hum.  What would be
 7            testimony from the customers?
 8                 MR. FRANCIS:  The Government expects
 9            that the victims would testify that information
10            misrepresented to them was important to them and
11            had they known the truth that the -- it would
12            have been significant and could have and in some
13            instances certainly would have changed things.
14                 THE COURT:  Um-hum.
15                 MR. FRANCIS:  I believe that, if I may,
16            your Honor, I think one of Mr. Albert's caution,
17            reason for caution is there's an element of
18            hypothetical.  If things were different they
19            wouldn't be the same.
20                 THE COURT:  Um-hum.
21                 MR. FRANCIS:  And so he doesn't want to
22            endorse the Government's characterization of how
23            they would have been different, but certainly --
24            and we don't expect that our victims at trial
25            would testify that they know for certain how they
```

```
 1        would have changed, however we expect that they
 2        would testify that they would not have agreed to
 3        pay -- they would not have, had they known the
 4        truth, had Mr. Katke and his conspirators
 5        represented -- gave them truthful information,
 6        that they would not have agreed to act to the way
 7        they did.
 8                 THE COURT:  Um-hum.  So does the
 9        Defendant admit that his lies affected the
10        negotiations?  Is that a fair summary?
11                 MR. ALBERT:  He admits that his lies
12        were intended to -- that his lies were intended
13        to impact the negotiations.
14                 THE COURT:  All right.
15                 All right.  I understand now that the
16        Defendant's prepared a petition to enter a plea
17        of guilty.
18                 MR. ALBERT:  Yes, your Honor.
19                 THE COURT:  All right.  And Mr. Katke,
20        have you discussed the petition fully with your
21        lawyer?
22                 THE DEFENDANT:  I have, your Honor.
23                 THE COURT:  Has the Government seen the
24        petition?
25                 MR. FRANCIS:  We have, your Honor.
```

```
1                      THE COURT:  Does it appear to be in

2          order?

3                      MR. FRANCIS:  It does.

4                      THE COURT:  All right.  Defendant and

5          his counsel may sign the petition in open court.

6                      (Pause.)

7                      MR. ALBERT:  May I hand it up, your

8          Honor?

9                      THE COURT:  Yes, please.

10                     (Pause.)

11                     THE COURT:  Defendant and his counsel

12         have signed the petition.  I've signed the

13         petition and it may be filed.

14                     Mr. Katke, based on everything I've

15         seen and heard it appears to me that you want to

16         plead guilty because you believe you are guilty

17         and that you choose to plead guilty freely and

18         voluntarily.  Is that correct?

19                     THE DEFENDANT:  That's correct, your

20         Honor.

21                     THE COURT:  I'm about to take your

22         guilty plea.  I'll have the information, that is

23         the charge, read to you unless you waive the

24         reading of the charge.  Do you waive the reading?

25                     THE DEFENDANT:  Yes, your Honor, I do.
```

```
 1                    THE COURT:  All right.

 2                    Mr. Clerk, put the Defendant to plea.

 3                    THE CLERK:  Yes, your Honor.

 4                    In the case of the United States of

 5        America v. Matthew Katke, Criminal Number 3:15-

 6        CR-38 RNC, as to Count 1 of the information

 7        charging violation of Title 18 United States Code

 8        Section 371, how to you wish to plead?

 9                    THE DEFENDANT:  Guilty.

10                    THE CLERK:  Your Honor, Defendant

11        pleads guilty to Count 1 of the information.

12                    THE COURT:  On the basis of the

13        Defendant's petition to enter a plea of guilty,

14        the Defendant's answers to my questions in open

15        court today, the remarks of defense counsel and

16        the prosecution, I find that the Defendant is

17        fully competent and capable of entering an

18        informed plea; that the defendant understands the

19        nature of the charge against him; that he knows

20        his right to a jury trial and his other trial

21        related rights; that he knows the maximum

22        possible sentence and the other possible

23        consequences of his guilty plea.

24                    I further find that the Defendant's

25        plea of guilty is a knowing and voluntary plea
```

1       supported by an adequate factual basis as to each

2       of the essential elements of the offense.

3                   I'm going to recommend that the

4       Defendant's plea of guilty be accepted.  The case

5       will be referred to the United States Probation

6       Officer for a presentence investigation.  It is

7       so ordered.

8                   You may sit down, Mr. Katke.

9                   THE DEFENDANT:  Thank you.

10                  (Pause.)

11                  THE COURT:  I've signed the finding and

12      recommendation on the plea of guilty.  It may be

13      filed.

14                  Mr. Katke, we have a United States

15      Probation Officer here with us today.  She will

16      interview at the conclusion of this hearing.

17      Either this officer or a colleague of this

18      officer later will prepare a presentence report

19      which will be submitted to the Court to assist in

20      determining your sentence.

21                  Please bear in mind that the Probation

22      Officers work for the court, not for the

23      prosecution.  Your cooperation with the Probation

24      Officer generally will benefit you.  However,

25      it's important that you carefully discuss with

1    your lawyer what you say to the Probation Office

2    because the presentence report is very important

3    in the determination of your sentence.

4         Counsel for either party may submit to

5    the Probation Office its version of the offense.

6         Mr. Katke, you have a right to object

7    to items contained in or omitted from the

8    presentence report.  Your lawyer must read and

9    review the presentence report with you before the

10   date set for submitting objections to the report.

11        After receiving counsel's objections

12   the Probation Officer shall conduct any further

13   investigation and make any revisions to the

14   presentence report that might be necessary.  The

15   revised presentence report then will be disclosed

16   to the Court and to counsel.  Defense counsel

17   must read and review with you the presentence

18   report with you prior to the sentencing hearing.

19        The presentence report must be

20   disclosed to the Defendant, to counsel for the

21   defendant and to the Government on or before

22   April 22nd, 2015.  Counsel shall communicate to

23   the Probation Officer any objections to the

24   presentence report on or before April 27th, 2015.

25   The amended presentence report must be disclosed

```
 1            to counsel and to the Court on or before May 16th,
 2            2015.  Not later than 10 days before sentencing
 3            counsel for both parties may submit sentencing
 4            memoranda to the Court addressing any factual
 5            inaccuracy in the final presentence report, the
 6            guidelines calculations, the available sentencing
 7            options, any restitution issues, any bases for
 8            departure and any other factual or legal issues
 9            relevant to sentencing.  Counsel's attention is
10            directed to Rule 32 of the District of
11            Connecticut's local Rules of Criminal Procedure
12            to guide them in their careful preparation for
13            sentencing.  Sentencing will be on June 3rd at
14            10:00 o'clock in the morning at the U.S. District
15            Court, Courtroom 3 -- excuse me, United States
16            District Court, North Courtroom, 450 Main Street
17            in Hartford.
18                      All right.  I've ordered the
19            presentence investigation and the presentence
20            report.
21                      What's the situation on bond?
22                      MR. FRANCIS:  I believe the parties
23            have a joint application on bond.
24                      THE COURT:  All right.
25                      MR. FRANCIS:  A $250,000 non-surety
```

```
 1      bond.  Conditions would include standard
 2      conditions, no offenses committed while on
 3      release, no possession of firearms or other
 4      dangerous weapons or illegal weapons.  And with
 5      respect to travel restrictions, the parties
 6      propose that Mr. Katke be unrestricted with
 7      respect to the lower 48, the continental United
 8      States I believe, and any other -- any travel
 9      outside of that would have to be on motion.
10                  THE COURT:  All right.
11                  Want to be heard at all?
12                  MR. ALBERT:  No, your Honor.  I think
13      Mr. Francis has stated it accurately.  Those
14      conditions, $250,000 unsecured bond, unrestricted
15      travel within the lower 48, no pretrial
16      supervision necessary.
17                  THE COURT:  All right.  And why is that
18      an appropriate order?
19                  MR. ALBERT:  Your Honor, the Defendant
20      has substantial ties to the New York community.
21      He has two young children.  He's lived his entire
22      -- well, he's lived his entire life in the United
23      States.  He's lived his entire adult life in the
24      New York area.  He's obviously in a cooperative
25      posture with the United States Government; he's
```

1    been dealing with the Government.  They've been

2    able to ascertain his character and his ties with

3    the community over the last year.

4            THE COURT:  Um-hum.

5            MR. ALBERT:  He's certainly been

6    extremely reliable and punctual and I'm quite

7    certain that he will appear as required.

8            THE COURT:  All right.

9            MR. FRANCIS:  I agree with that, your

10   Honor.  The Defendant has made himself available

11   to the Government and has never failed to appear

12   when we've asked him to come in with counsel, and

13   we have no reason to doubt that he will in fact

14   appear for sentencing.

15           THE COURT:  Do you have any information

16   that he's either a risk of flight of a danger to

17   the community?

18           MR. FRANCIS:  No, your Honor.

19           THE COURT:  All right.  I accept the

20   recommendation of counsel.  I think it's

21   reasonable and I'll set those conditions.

22           So as to the bond, it's a type 2 bond

23   in the amount of $250,000.

24           As to the conditions of release,

25   standard conditions 1 through 5, the Defendant

```
1        must not violate federal, state or local law
2        while on release.  He must cooperate in the
3        collection of a DNA sample if it's authorized by
4        the statute.  He must advise the Court before any
5        change of an address or phone number.  He must
6        appear in court as required and if convicted
7        surrender to serve any sentence that might be
8        imposed.  He must sign his appearance bond.
9                 Is the Defendant employed?
10                MR. ALBERT:  He was until very
11       recently, but now he is not.
12                THE COURT:  He has a passport?
13                MR. ALBERT:  He does.
14                THE COURT:  All right.  So why don't we
15       have him surrender his passport to counsel.
16                MR. ALBERT:  He's already done do.
17                THE COURT:  All right.  Thank you.
18                So condition 7, 7(d), he shall
19       surrender his passport to counsel who shall hold
20       the passport as an officer of the court pending
21       the completion of the prosecution and including
22       any and all appeals.  He shall not obtain any
23       other passport or international travel document.
24       He may travel to the lower 48, in the words of
25       counsel.  Outside of that he may seek permission
```

```
 1          of the Court.
 2                    Do you have any firearms?
 3                    THE DEFENDANT:  I do not.
 4                    THE COURT:  He shall not possess a
 5          firearm, destructive device or other dangerous
 6          weapon.  No excessive use of alcohol, no unlawful
 7          possession of narcotic drug or other controlled
 8          substance unless prescribed.
 9                    Have I overlooked anything, either
10          counsel or the Probation Officer?
11                    MR. FRANCIS:  Nothing for the
12          Government.
13                    MR. ALBERT:  I don't think so, your
14          Honor.  Thank you.
15                    THE COURT:  All right.  I have signed
16          all the paperwork.  Is there anything else we
17          should do in Mr. Katke's case today?
18                    MR. FRANCIS:  Nothing for the
19          Government.
20                    THE COURT:  All right.  Thank you,
21          Counsel.  We're in recess.
22                    MR. ALBERT:  Thank you, your Honor.
23                    MR. FRANCIS:  Thank you, your Honor.
24                    THE CLERK:  All rise.
25                    THE COURT:  Go ahead.
```

1                    THE CLERK:  The Honorable United States

2      District Court is now in recess.

3                    (Proceedings concluded at 5:52 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              <u>CERTIFICATE</u>

2

3              I hereby certify that the foregoing 68

4    pages are a complete and accurate transcription to the

5    best of my ability of the electronic recording of the

6    Change of Plea Hearing in re:   UNITED STATES OF

7    AMERICA vs. MATTHEW KATKE, Criminal No. 3:15-CR-00038

8    (RNC) held before The Hon. Donna F. Martinez, United

9    States Magistrate Judge, in Hartford, Connecticut, on

10   March 11, 2015.

11

12   s/s_____           _____

13   Suzanne Benoit, Transcriber           Date

14

15

16

17

18

19

20

21

22

23

24

25